

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2023 MAY -1  P 3:23

CAROL L. MICHEL
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

**BILL OF INFORMATION FOR CONSPIRACY TO COMMIT WIRE FRAUD**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. **23-85** |
| v. | * | SECTION: **SECT. B  MAG. 4** |
| SIEDAH ELEY | * | VIOLATIONS: 18 U.S.C. § 371 |
| | | 18 U.S.C. § 1343 |
| | * | |

\* \* \*

The United States Attorney charges that:

### COUNT 1

**A.  AT ALL TIMES MATERIAL HEREIN:**

1.  The defendant, **SIEDAH ELEY** ("**ELEY**"), was a resident of Columbia, Maryland.

2.  **ELEY** maintained multiple financial accounts, including one at Stride Bank.

3.  Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-Conspirator 4, Co-Conspirator 5, Co-Conspirator 6, and Co-Conspirator 7 were adult friends, relatives, and associates of **ELEY**.

```
__Fee_____
__Process_____
X_Dktd_____
__CtRmDep____
__Doc.No._____
```

### The Small Business Administration

4.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

5.     As part of its efforts, the SBA provided business loans through banks, credit unions, and other lenders. Those loans had government backed guarantees.

### The CARES Act

6.     The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic.

### The Paycheck Protection Program

7.     One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

8.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number

of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

9. Among the types of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure. In order to be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the IRS on Form 1040, Schedule C, for a given tax year. The lending institution or loan processor used this information to calculate the amount of money the individual was entitled to receive under the PPP. The maximum PPP loan amount for a sole proprietor with no employees was $20,833.00.

10. A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

11. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

12. "Prestamos CDFI" "Capital Plus Financial," and "Benworth Capital" were among many designated financial institutions authorized to process PPP loans that were guaranteed by the SBA.

13. Blueacorn was created during the COVID-19 pandemic to assist small businesses in securing PPP loans.

14. Blueacorn would transmit PPP loan applications to approved lenders including Prestamos CDFI, Capital Plus Financial, and Benworth Capital.

15. Approved PPP loans were generally funded by wiring the proceeds of the loan into the applicant's bank account, Current account, or another designated financial institution.

**B.   THE CONSPIRACY:**

Beginning at a time unknown, but not later than April 19, 2021, and continuing through at least on or about May 20, 2021, in the District of Maryland and elsewhere, the defendant, **SIEDAH ELEY**, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-Conspirator 4, Co-Conspirator 5, Co-Conspirator 6, Co-Conspirator 7, and others known and unknown to the United States, did willfully and knowingly combine, conspire, confederate, and agree together and with each other to execute, and attempt to execute, a scheme and artifice to defraud and to obtain money, funds, and property by means of false and fraudulent pretenses, representations and promises and did transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals and sounds, in violation of Title 18, United States Code, Section 1343.

**C.   PURPOSE OF THE CONSPIRACY:**

The purpose of the conspiracy was for **SIEDAH ELEY**, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-Conspirator 4, Co-Conspirator 5, Co-Conspirator 6, Co-Conspirator 7, and others known and unknown to the United States, to enrich themselves unjustly by preparing and submitting PPP loan applications by means of materially false and fraudulent pretenses and representations.

4

**D.   MANNER AND MEANS:**

The manner and means by which **SIEDAH ELEY**, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-Conspirator 4, Co-Conspirator 5, Co-Conspirator 6, Co-Conspirator 7, and others known and unknown to the United States sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

1. **ELEY** recruited friends and family members primarily via word of mouth and text message to participate in a scheme whereby they would obtain money from PPP programs with her assistance fraudulently.

2. **ELEY** requested and received from interested individuals the following information for the applicant: the applicant's name, address, social security, and phone number, a copy of the front and back of the applicant's driver's license, a bank statement from 2020, and the routing and account number for the applicant's bank account in order to prepare the fraudulent PPP loan applications.

3. **ELEY** created false and fraudulent loan applications, each of which stated the applicant had a sole proprietorship in the beauty industry and generated substantial income from those businesses. Where the applicant actually received income in a *de minimis* amount from work in the beauty industry, **ELEY** knowingly inflated the amount of income falsely.

4. **ELEY** prepared and submitted the false and fraudulent PPP sole proprietor loan applications via the Blueacorn online portal.

5. **ELEY** falsely certified that the application and the information provided in the supporting documents were true and accurate when she electronically submitted the fraudulent PPP loan applications.

6. **ELEY** charged some applicants up to approximately $5,000.00 once the PPP loan was funded. **ELEY** received these funds in cash or by electronic means via the Zelle digital payment network.

E. **OVERT ACTS:**

In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the District of Maryland and elsewhere:

1. On or about April 23, 2021, **ELEY** completed and submitted a false PPP loan application in her own name and on behalf of herself (Loan number x58704) electronically. As a result of the fraudulent application, **ELEY** received approximately $20,832, via electronic deposit into her Stride Bank account.

2. On or about May 4, 2021, **ELEY** completed submitted a false PPP loan applicant in the name of Co-Conspirator 1 (Loan Number x68700) electronically. As a result of the fraudulent application, Co-Conspirator 1 received approximately $20,832, via electronic means into Co-Conspirator 1's JPMorgan Chase Bank account.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

1. The allegations of Count 1 are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2. As a result of the offense alleged in Count 1, defendant, **SIEDAH ELEY**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said offense.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

DUANE A. EVANS
UNITED STATES ATTORNEY

JORDAN GINSBERG
Assistant United States Attorney
Illinois Bar No. 6282956

New Orleans, Louisiana
May 1, 2023

No. _____

# United States District Court

FOR THE

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

vs.

SIEDAH ELEY

BILL OF INFORMATION FOR CONSPIRACY TO COMMIT WIRE FRAUD

Violation(s): 18 U.S.C. § 371
18 U.S.C. § 1343

Filed _____, 20 23

_____, Clerk.

By _____, Deputy

Assistant United States Attorney
JORDAN GINSBERG